IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KENNETH ROLAND ANDERSON, J.R.,**

    **Plaintiff,**

v.                                                  Civil Action No. 1:06cv86

**JIM RUBENSTEIN, WILLIAM M. FOX,
DR. LARRY D. WILLIAMSON AND
BEVERLY GANDEE,**

    **Defendants.**

## ORDER ADOPTING THE MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is now before the Court for consideration of United States Magistrate Judge John S. Kaull's Report and Recommendation (dkt no. 14), dated October 5, 2006, and the plaintiff's corresponding objections (dkt no. 15), as well as his motion to amend (dkt no. 13). For the reasons stated below, the Court **DENIES** the motion to amend, **ADOPTS** the Magistrate Judge's Report and Recommendation in its entirety and **DISMISSES WITH PREJUDICE** the plaintiff's complaint.

### I. PLAINTIFF'S COMPLAINT

On May 26, 2006, Kenneth Roland Anderson, Jr. ("Anderson") filed a pro se civil rights complaint with the Court. Anderson, a state inmate at St. Mary's Correctional Center ("SMCC"), proceeding in forma pauperis, asserts that he has been experiencing "excruciating pains in his left cerebrum region since about March of 2005." He states that the pain includes or causes severe

migraine headaches, dizzy spells, loss of equilibrium, and blurry vision in his right eye. Anderson further states that the source of his pain is a "visible knot" located under the left side of his skull.

In addition, Anderson asserts that, for the 14 months preceding the filing of his complaint, he had been taking several types of medication for his symptoms but that the medications had not provided him with any relief from the pain. He also states that, on July 19, 2005, Dr. Peter Strobl diagnosed him with chronic Sphenoid Sinusitis. Relying on Dr. Strobl's July 19, 2005 radiology report, he states that he has a two centimeter mucus retention cyst or mucosal polyp in his right maxillary sinus. Relying on a September 14, 2005 letter from Dr. Strobl, Anderson further states that Strobl indicated his chronic sinusitis could be the cause of his facial pain and headaches.

Accordingly, Anderson asserts that the defendants have denied his requests for a head MRI scan or a CT-scan, despite his offer to self-pay or prepay the costs. He contends that the defendants have made no attempt to discover the nature of his pain. Therefore, Anderson argues that the defendants have been deliberately indifferent to his serious medical needs and should be held accountable for his pain and suffering in the amount of $1,500 per

day. He also requests that the Court order the defendants to perform a MRI scan or CT-scan on his brain.

## II. PROCEDURAL HISTORY

In accordance with Local Rule of Prisoner Litigation 83.02 <u>et seq.</u>, the Court referred the matter to Magistrate Judge John S. Kaull for a preliminary review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. In his Report and Recommendation issued on October 5, 2006, Magistrate Judge Kaull recommended that Anderson's claims be dismissed because he concluded that the deliberate indifference claims were frivolous.

With respect to Anderson's deliberate indifference claims against the defendants in their personal capacity, the Magistrate Judge concluded that Anderson's complaint contained no allegations that any specific defendant acted in violation of any constitutional right. Rather, the defendant generally asserted that the defendants collectively violated his constitutional rights.

The Magistrate Judge further concluded that, even if Anderson had identified the specific defendant who committed each of the acts alleged in his complaint, his allegations amounted to nothing more than dissatisfaction with the diagnosis and treatment provided to him by the defendants. Moreover, he concluded that, because

Anderson did not assert that a policy or custom of the entity for which the plaintiffs worked played a part in the alleged violation of his constitutional rights, he could not maintain deliberate indifference claims against the defendants in their official capacities.

On the same day that the Magistrate Judge issued his Report and Recommendation, Anderson filed a motion to amend his complaint to add additional defendants to this case. Shortly thereafter, on October 13, 2007, Anderson filed timely objections to Magistrate Judge Kaull's Report and Recommendation. Anderson initially asserted a new claim that he has not received proper mental health services at both the regional jail and SMCC. Specifically, he asserts that, despite his past diagnosis of mental health illnesses, he has been denied counseling by a licensed mental health professional on a regular basis.[1]

With respect to his deliberate indifference claims against the defendants in their official capacities, Anderson states that the

---

[1] Anderson did not raise any issues concerning the mental health treatment that he has been receiving while incarcerated in his civil rights complaint. Significantly, he also did not make any complaint concerning his mental health treatment in the grievance forms that he submitted in the administrative remedy process. Accordingly, the record does not demonstrate that the mental health treatment issue raised by Anderson for the first time in his objections has been exhausted in the administrative remedy process. Therefore, the mental health issue will not be addressed by the Court in this order. Porter v. Nussle, 534 U.S. 516, 524 (2002)(citing Booth v. Churner, 532 U.S. 731, 741 (2001)).

defendants "are public servants paid by taxpayers to provide amongst other services in their official capacities, prisoners proper medical attention. . . ." He also asserts that, as an inmate, he does not have access to the policy directives from each of the defendants' superiors.

Anderson also states that the Magistrate Judge overlooked the fact that two medical problems are at issue in this lawsuit. First, he asserts that the two centimeter object in his sinuses should be surgically removed and a biopsy be performed to check for cancer.[2] Second, Anderson asserts that he has a lump in his "left cerebral hemisphere" which causes him to experience severe pain. He claims that, despite his requests, the defendants have failed to order a CT-scan or MRI on his brain.[3] Therefore, he asserts that his sinus problem is receiving improper care while the pain in his

---

[2] According to Anderson, he has been repeatedly exposed to asbestos as a result of his job assignment in the "83 Building." He states that asbestos has been removed from the building on numerous occasions during the four years in which he has been assigned to work there and that the "air-born asbestos particles" could penetrate his sinus areas. However, in his civil rights complaint, Anderson challenges only the treatment of his medical conditions and does not raise any issues concerning the cause of those conditions. Therefore, information concerning the "83 Building" is irrelevant to the deliberate indifference claims at issue in this case.

[3] Anderson also states that, during his arrest, he was "savagely beaten" and that his nose was "smashed into the blacktop payment by fully body weight of police officers jumping on the back of his skull numerous times." Anderson believes the "knot" on his skull may have originated from this "head trauma." Again, this information is irrelevant to Anderson's deliberate indifference claims because the cause of his medical conditions are not an issue raised in his civil rights complaint.

left cerebrum has been totally ignored by medical staff for over two years.

### III. STANDARD OF REVIEW

The Court liberally construes pro se complaints that raise civil rights issues. Gordon v. Leeks, 574 F.2d 1147, 1151 (4th Cir. 1978). However, even under that liberal standard, the court has the authority to dismiss an in forma pauperis action that is frivolous or malicious or that fails to state a claim for which relief can be granted. 28 U.S.C. § 1915(e)(2)(B). Such dismissal is proper when, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear that, as a matter of law, no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

Following a magistrate judge's report and recommendation concerning a prisoner's complaint, the Court will review de novo any portions of the report and recommendation to which a specific objection is made, 28 U.S.C. § 636(b)(1), and the Court may adopt, without explanation, any of the magistrate's recommendations to which the prisoner does not object. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

### IV. ANALYSIS

**A. Original Complaint- Deliberate Indifference Claims**

    **1. Personal Capacity- Insufficient Pleading**

To establish a §1983 claim, Anderson must allege that a specific defendant personally caused or played a role in depriving him of a federal right. West v. Atkins, 487 U.S. 42 (1988); Gomez v. Toledo, 466 U.S. 635, 640 (1980). Accordingly, a §1983 complaint must contain specific factual allegations demonstrating the involvement of individual defendants. A careful review of Anderson's complaint, however, demonstrates that there are absolutely no specific allegations against any individual defendant.

Specifically, Anderson fails to allege that any of the named defendants personally played a role in allegedly denying him adequate medical treatment. Despite the requirement to liberally construe pro se complaints, the Court cannot ignore Anderson's clear failure to allege facts which set for a cognizable §1983 claim. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990). Therefore, Anderson's §1983 claims are without merit because he made only general allegations that the defendants collectively deprived him of constitutional rights.

**2. Personal Capacity- Dissatisfaction with Medical Treatment**

Even if Anderson had identified the specific actions taken by each defendant in allegedly providing inadequate medical treatment for his medical conditions, he failed to allege facts sufficient to support a deliberate indifference claim. Specifically, Anderson must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). He, however, has alleged only a dissatisfaction with the medical diagnosis and treatment provided by the defendants.

In order to establish an Eighth Amendment violation, a prisoner must prove two elements: (1) that, objectively, the deprivation of a basis human need was "sufficiently serious;" and (2) that, subjectively, the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). [D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "To establish that a healthcare provider's actions

8

constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va. 1996), aff'd, 108 F.3d 1373 (4th Cir. 1997). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

The records attached to Anderson's civil rights complaint establish that Anderson was prescribed, at minimum, Augmentin, Sudafed and saline nose spray for his medical complaints. Significantly, Dr. Larry D. Williamson also ordered a CT-scan of Anderson's sinuses. The CT-scan was performed on July 19, 2005, and Dr. Peter Strobl prepared a radiology report setting forth his findings based on the scan. Dr. Strobl's radiology report indicates that the CT-scan revealed a "[two centimeter] rounded soft tissue lesion involving the floor of the right maxillary sinus consistent with a mucus retention cyst or mucosal polyp." It also noted that there was "mild mucosal disease involving essentially

all paranasal sinuses." Dr. Strobl indicated that the findings were consistent with "chronic mild pansinusitis."

In a September 14, 2005 letter, Dr. Strobl responded to a letter from Anderson and explained that the CT-scan ordered by Dr. Williamson had been limited to Anderson's sinuses and did not include a scan of his brain. Dr. Strobl stated that the CT-scan showed chronic sinusitis involving nearly all of Anderson's sinuses. He also stated that the chronic sinusitis could be the cause of Anderson's facial pain and headaches. He advised Anderson that chronic sinusitis is generally treated with antibiotics and decongestants. Dr. Strobl further stated that surgical treatments is available for severe, refractory cases of sinusitis, but that surgery is usually a last resort.

On October 3, 2005, Anderson filed a G-1 Grievance Form, stating that the doctor had refused to perform any tests to determine whether a "huge lump" under the left top side of his skull was a tumor. The next day, Anderson's unit manager responded to the G-1 Grievance Form, stating that Anderson had been evaluated by Dr. Williamson on October 3, 2005 and was prescribed a new medication at that time. She advised that, if after an appropriate trial of the new medication, his symptoms did not improve that he should file a health services report. She further

advised that medical services should be informed if his condition changed.

Similarly, in his G-2 Grievance Form, dated October 7, 2005, Anderson states that he had "requested and been denied a brain tumor scan by a local hospital or outside medical agency." On October 20, 2005, Warden William Fox responded to the G-2 Grievance Form, stating that Anderson had been evaluated by three doctors, and that the three doctors agreed on his diagnosis. Therefore, Warden Fox denied the G-2 Grievance.

On October 24, 2005, Anderson appealed the grievance decisions to the Commissioner of the West Virginia Department of Corrections, Jim Rubenstein, stating that he had requested a medical test at a local hospital for the detection of a brain tumor. He conceded that a CT-scan of his sinuses had been ordered, but stated that it would not detect brain tumors. On January 4, 2006, Anderson appealed his grievance decisions for a second time to Commissioner Rubenstein and, for the first time, stated that he would like the two centimeter object removed from his sinus area. He also restated that he had a painful "knot" on the left side of his skull which caused him to have blurry vision, migraine headaches, and severe pain. Accordingly, he requested an MRI or CT-scan of his brain.

Although Anderson claims that the treatment or the alleged lack thereof for two medical problems are at issue in this case, his complaint does not allege that he has requested surgery for the removal of two centimeter lesion in his right sinus. Rather, Anderson alleges only that he "has requested on several different occasions a head MRI scan or CT-scan, and has volunteered to self-prepay all cost." Furthermore, Anderson's grievance forms establish that he did not raise any issue concerning the removal of the lesion in his sinus until his second appeal to Commissioner Rubenstein. Until January, 2006, Anderson's grievances forms had been solely focused on the alleged denial of medical tests to detect a possible brain tumor. Significantly, the medical records attached to his complaint demonstrate that the lesion in his sinus was discovered in the course of treatment for his initial complaints of pain, headaches, and blurry vision.

However, even if Anderson has sufficiently alleged that he has not received surgery for his sinus condition, he has failed to produce any evidence that demonstrates that such surgery is required for his condition. Rather, the documentation attached to his civil rights complaint does not indicate that surgery is the only appropriate and required treatment of his chronic sinusitis.

**ANDERSON v. RUBENSTEIN**                                            **1:06cv86**

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Specifically, Dr. Strobl's letter to Anderson advised him that surgery is the last resort treatment for chronic sinusitis. Moreover, the medical records attached to Anderson's complaint clearly demonstrate that he has been prescribed antibiotics and decongestants for his sinus condition. Therefore, Anderson merely disagrees with the treatment that he is being provided for his sinusitis.

With respect to his claim of complete denial of medical treatment, Anderson concedes that he has been prescribed pain medication for the pain that he claims he is experiencing as a result of a "knot" on the left side of his skull. According to Anderson, however, the pain medication has been unsuccessful in treating his symptoms, and, therefore, either an MRI or CT-scan should be ordered to determine whether he has a brain tumor. The defendants' alleged refusal to order such a scan is the sole basis for Anderson's allegation that they have completely denied medical treatment for the "knot" in his skull. However, the medical records attached to Anderson's complaint demonstrate that the lesion in his sinuses was discovered through a CT-scan ordered as part of the treatment for his complaints of pain, headaches and blurred vision which he contends result from the "knot."

13

The records attached to Anderson's complaint in conjunction with the allegations in his complaint establish that the defendants have consistently evaluated Anderson and provided medical treatment for his complaints of pain, headaches and blurry vision purportedly arising from a "knot" on the left side of his skull. Therefore, Anderson simply disagrees with the defendants' decision to order a CT-scan on his sinuses rather than his brain and to prescribe medication rather than procedure with surgery.

The Court is not in a position to second guess the medical judgments of a licensed physician. Its responsibility is to protect individuals from being deprived of a basic human need, such as medical treatment. Anderson must establish more than that the defendants may have negligently chosen to pursue an ineffective form of medical treatment for his condition. There is simply no evidence that the defendants acted with the level of culpability that would subject them to liability in this matter. Accordingly, the Court adopts the Magistrate Judge's recommendation concerning Anderson's deliberate indifference claims against the defendants in their personal capacities.

### 3. Official Capacity

Personal-capacity suits seek to impose personal liability upon an individual for actions he takes under the color of state law.

Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978). A governmental entity "may not be sued under 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Rather, the entity is responsible under 1983 only when it is the execution of its policy or custom that results in the injury. Id. Simply put, the entity itself must be the "moving force" behind the deprivation of the plaintiff's rights. Id.

Anderson does not allege that the West Virginia Department of Corrections authorized its employees to employ grossly incompetent medical procedures. Although he claims that he does not have access to the policies under which the defendants worked, Anderson does not even allege that he is not the only inmate who has filed a § 1983 action arising from the medical treatment or lack thereof at SMCC or point to any specific inmate complaints containing inadequate medical treatment allegations similar to his claims in the present matter. Rather, Anderson's complaint only raises issues with his specific medical treatment and does not even suggest a universal problem with the medical care provided at SMCC.

Therefore, Anderson fails to make allegations sufficient to support official capacity claims.

**B. Motion to Amend**

In his motion to amend, Anderson seeks leave to add 17 individuals, who are members of the West Virginia Board of Medicine, as defendants in this case. He states that these individuals are being added "to prove deliberate indifference" to his medical needs which he claims constitutes cruel and unusual punishment. He further states that the proposed defendants are being sue in both their personal and professional capacities. Anderson also attaches a copy of a letter from the West Virginia Board of Medicine, stating that Defendant Williamson committed no violations of the West Virginia Medical Malpractice Act.

Because Anderson failed to allege any specific actions taken by each of the seventeen proposed defendants which allegedly deprived him of his federal rights, the Court must assume that he is relying on the factual scenario set forth in his initial civil rights complaint as the basis for his deliberate indifference claims against these individuals. Accordingly, any claim asserted against these proposed defendants would fail for the reasons that his deliberate indifference claims against the original defendants

16

fail. Therefore, the Court **DENIES** Anderson's motion to amend because the amendment would be futile.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Anderson's motion to amend (dkt no. 13), **ADOPTS** Magistrate Judge Kaull's October 5, 2006 Report and Recommendation (dkt. no. 14), **OVERRULES** Anderson's objections (dkt. no. 15), and **DISMISSES WITH PREJUDICE** Anderson's complaint (dkt. no. 1).

It is **SO ORDERED.**

The Clerk is directed to mail a copy of this Order to the pro se plaintiff via certified mail, return receipt requested and to counsel of record.

Dated: April 10, 2007

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE